UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

186232
PHELAN HALLINAN DIAMOND & JONES, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
856-813-5500
Attorneys for ROUNDPOINT MORTGAGE SERVICING CORP. SERVICER FOR QUEEN'S PARK OVAL ASSET HOLDING TRUST

In Re:

LAURA L. DESCHAINE

Case No: 15-15679 - GMB

Hearing Date: TBD

Judge: GLORIA M. BURNS

Chapter: 7

## CERTIFICATION RE CALCULATION OF AMOUNTS DUE ON THE NOTE AND MORTGAGE DATED 12/14/2005

_Travis Hunter_ of full age, employed as _AVP- Bankruptcy_ by ROUNDPOINT MORTGAGE SERVICING CORP. SERVICER FOR QUEEN'S PARK OVAL ASSET HOLDING TRUST, hereby certifies the following information:

Recorded on 12/27/2005, in GLOUCESTER County, in Book MB9321, Page 298, Document ID 93139

Property Address: 125 W MONROE STREET, PAULSBORO, NJ 08066

Mortgage Holder: QUEEN'S PARK OVAL ASSET HOLDING TRUST

### I. PAYOFF STATEMENT

| | |
|---|---|
| Unpaid Principal Balance | $ 103,489.23 |
| Interest from 03/01/2009 to 04/03/2015 | $ 42,533.77 |
| (Interest rate = 6.75% per year, $19.14 per day x 2225 days) | |
| Late Charges from _____ to _____ ( _____ /mo. X ____ mos.) | $ 0.00 |
| Attorney's fees and costs as of _____ | $ 2,714.74 |
| Advances through _____ for: | |
|     Real Estate Taxes | $ 32,067.54 |

| | | |
|---|---|---|
| Insurance Premiums | $ 0.00 | |
| M.I.P | $ 0.00 | |
| Inspection | $ 0.00 | |
| Winterizing/Securing | $ 0.00 | |
| *Sub-Total of Advances* | $ 32,067.54 | |
| Less Escrow Monies | $( 0.00      ) | |
| *Net Advances* | $ 32,067.54 | $ 32,067.54 |

| | |
|---|---|
| Interest on advances from _____ to _____ | $ _____ |
| Other charges (specify: Property Preservation) | $ 7,495.26 |
| Other charges (specify: Property Inspections) | $ 255.00 |
| Other charges (specify: Appraisal/BPO) | $ 125.00 |
| Less unearned interest | $(_____) |
| **TOTAL DUE AS OF 04/03/2015** | $ 188,680.54 |

## II. EQUITY ANALYSIS (When appropriate)

Estimated fair market value of real estate (as of 03/31/2015)..................   $ 75,000.00   *

Liens on the real estate:

1. Real estate taxes as of 04/03/2015 ............................   $ 32,067.54
2. First Mortgage as of 04/03/2015    $ 156,613.00
3. Second Mortgage (principal and interest), as of    $ 0.00
4. Other (specify: 10% cost of sale/FMV)................   $ 7,500.00
   **TOTAL LIENS**...................................   $ 196,180.54
   **APPARENT EQUITY AS OF 04/03/2015**   $ -121,180.54

*Source: Schedule A (e.g. appraisal, tax bill/assessment, contract of sale, debtor's schedules, etc.)

I certify under penalty of perjury that the foregoing is true and correct.

4-22-15
Date of signature                                Signature

*Local Form 15, rev.8/1/06.jml*

IN RE **Deschaine, Laura L** _____   Case No. _____
                                          Debtor(s)                                                                                              (If known)

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **125 West Monroe Street**<br>**Paulsboro, NJ 08066** | | | 75,000.00 | 103,489.00 |
| | | **TOTAL** | 75,000.00 | |
| | | | (Report also on Summary of Schedules) | |

© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Recording requested by:
SECRETARY OF HOUSING AND
URBAN DEVELOPMENT

When recorded mail to:
M.E. WILEMAN
ORION FINANCIAL GROUP, INC
2860 EXCHANGE BLVD, SUITE 100
SOUTH LAKE, TX 76092
Attn: ASSIGNMENT UNIT

Docket: 00001178
Type: ASM    Pages: 1
James N. Hogan, Gloucester County Clerk
Receipt#: 309801    11:49:50A    Jan 13, 2014
Recording Fee:    40.00 AB    250    44

RECORD THIRD

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitment

For value received, the undersigned, SECRETARY OF HOUSING AND URBAN DEVELOPMENT, 451 7TH STREET, S.W., WASHINGTON, D.C. 20410, hereby grants, assigns and transfers to:
QUEENS PARK OVAL ASSET HOLDING TRUST, C/O U.S. BANK TRUST NATIONAL ASSOCIATION
300 DELAWARE AVE, 9TH FLOOR, WILMINGTON, DE 19801

All its interest under that certain Mortgage dated 12/14/05, executed by: LAURA L DESCHAINE, Mortgagor as per MORTGAGE recorded as Instrument No. 93139 on 12/27/05 in Book 9321 Page 299 of official records in the County Recorder's Office of GLOUCESTER County, NEW JERSEY.
Tax Parcel = BLK 58 LOT 3,    PAULSBORO BOROUGH TAX COLLECTOR
Original Mortgage $109,000.00
125 W MONROE STREET, PAULSBORO, NJ 08066

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 1-6-14    SECRETARY OF HOUSING AND URBAN DEVELOPMENT
by Queen's Park Oval Asset Holding Trust
Its Attorney In Fact

By _____
Kelli J. Airis, Vice President

State of Texas
County of Tarrant

On 1-6-14 before me, M. Conner, Notary Public, personally appeared Kelli J. Airis, VP, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: M. Conner

M. CONNER
MY COMMISSION EXPIRES
November 30, 2014

Prepared by: RALPH FLORES
101 S MARENGO AVE, 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 456-1890

Orion Financial Group Inc.

DE:

25CAP/AOM/114/OPD/1

Recording requested by:
BANK OF AMERICA, N.A.

When recorded mail to:
M.E. WILEMAN
ORION FINANCIAL GROUP, INC.
2860 EXCHANGE BLVD, SUITE 100
SOUTH LAKE, TX 76092
Attn: ASSIGNMENT UNIT

Docket: 00001177
Type: ASM    Pages: 1
James N. Hogan, Gloucester County Clerk
Receipt#: 309801    11:43:27A    Jan 13, 2014
Recording Fee:    40.00 AB    250    43

**RECORD SECOND**

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitment

For value received, the undersigned, BANK OF AMERICA, N.A., 101 S MARENGO AVE, 4TH FLOOR, PASADENA, CA 91101, hereby grants, assigns and transfers to:
SECRETARY OF HOUSING AND URBAN DEVELOPMENT
451 7TH STREET, S.W., WASHINGTON, D.C. 20410

All its interest under that certain Mortgage dated 12/14/05, executed by: LAURA L DESCHAINE, Mortgagor as per MORTGAGE recorded as Instrument No. 93139 on 12/27/05 in Book 9321 Page 299 of official records in the County Recorder's Office of GLOUCESTER County, NEW JERSEY.
  Tax Parcel = BLK 58 LOT 3,    PAULSBORO BOROUGH TAX COLLECTOR
Original Mortgage $109,000.00
125 W MONROE STREET, PAULSBORO, NJ 08066

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 10/3/13    BANK OF AMERICA, N.A.

By _____
LISA NIX, ASSISTANT VICE PRESIDENT

State of California
County of Los Angeles

On OCT 03 2013 before me, ANITA J. CALDERON, Notary Public, personally appeared LISA NIX, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
ANITA J. CALDERON

ANITA J. CALDERON
Commission # 1931780
Notary Public - California
Ventura County
My Comm. Expires May 5, 2015

Prepared by: RALPH FLORES
101 S MARENGO AVE, 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 456-1890

Orion Financial Group Inc.

Recording requested by:
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC AS
NOMINEE FOR GATEWAY FUNDING
DIVERSIFIED MORTGAGE
SERVICES, LP, ITS SUCCESSORS
AND ASSIGNS

When recorded mail to:
M.E. WILEMAN
ORION FINANCIAL GROUP, INC.
2860 EXCHANGE BLVD, SUITE 100
SOUTH LAKE, TX 76092
Attn: ASSIGNMENT UNIT

Docket: 00001176
Type: ASM    Pages: 1
James N. Hogan, Gloucester County Clerk
Receipt#: 309801    11:43:05A    Jan 13, 2014
Recording Fee:    40.00  AB    250    42

**RECORD FIRST**

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitment

For value received, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP, ITS SUCCESSORS AND ASSIGNS, 1901 E VOORHEES ST, STE C, DANVILLE, IL 61834, hereby grants, assigns and transfers to:
BANK OF AMERICA, N.A.,
101 S MARENGO AVE, 4TH FLOOR, PASADENA, CA 91101

All its interest under that certain Mortgage dated 12/14/05, executed by: LAURA L DESCHAINE, Mortgagor as per MORTGAGE recorded as Instrument No. 93139 on 12/27/05 in Book 9321 Page 299 of official records in the County Recorder's Office of GLOUCESTER County, NEW JERSEY.
Tax Parcel - BLK 58 LOT 3.    PAULSBORO BOROUGH TAX COLLECTOR
Original Mortgage $109,000.00
125 W MONROE STREET, PAULSBORO, NJ 08066

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 10/3/13    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP, ITS SUCCESSORS AND ASSIGNS

By _____
LISA NIX, ASSISTANT SECRETARY

State of California
County of Los Angeles

On OCT 03 2013 before me, ANITA J. CALDERON, Notary Public, personally appeared LISA NIX, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
ANITA J. CALDERON

Prepared by: RALPH FLORES
101 S MARENGO AVE, 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 456-1890

ANITA J. CALDERON
Commission # 1931780
Notary Public - California
Ventura County
My Comm. Expires May 5, 2015

Orion Financial Group Inc.

DESC
25CAP/AOM/T14/OPD/1

```
DOCKET# 93139           Type: MTG
                        PAGES: 10
JAMES N. HOGAN
GLOUCESTER COUNTY CLERK
RECEIPT#: 69815         10:28:21 A.M.
12/27/2005
MB  9321      298
```

## GLOUCESTER COUNTY RECORDING DATA PAGE

**PLEASE DO NOT DETACH THIS PAGE FROM THE ORIGINAL DOCUMENT AS IT CONTAINS IMPORTANT INFORMATION AND IS PART OF THE PERMANENT RECORD.**

110

**RECORD & RETURN TO:**

Delaware Valley Abs
110. Marter Ave ste 211
moorestown, NJ. 08057

## GLOUCESTER COUNTY RECORDING DATA PAGE
### JAMES N. HOGAN, COUNTY CLERK

After Recording Return To:
**Gateway Funding Diversified Mortgage Services L.P.**
**300 Welsh Road, Building 5**
**Horsham, PENNSYLVANIA 19044**

Record and Return to:
*DELAWARE VALLEY ABSTRACT CORP.*
110 Marter Avenue
Suite 211
Moorestown, NJ 08057

——————————————————— [Space Above This Line For Recording Data] ———————————————————

# MORTGAGE

FHA CASE NO.


MIN:

THIS MORTGAGE ("Security Instrument") is given on **December 14, 2005**
The mortgagor is **Laura L Deschaine**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Gateway Funding Diversified Mortgage Services L.P.**

("Lender") is organized and existing under the laws of **PENNSYLVANIA**                                                                    , and has a principal office and mailing address of **300 Welsh Road, Building 5, Horsham, PENNSYLVANIA 19044**

Borrower owes Lender the principal sum of **One Hundred Nine Thousand and no/100**
Dollars (U.S. $ **109,000.00**          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **January 01, 2036**          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, §1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $ **109,000.00**                              . For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **Gloucester**
County, New Jersey:

**NEW JERSEY FHA MORTGAGE**                                                                                                6/96

ITEM 2889L1 (0205)—MERS                              *(Page 1 of 7 pages)*                              GreatDocs™
                                                                                                To Order Call: 1-800-968-5775

See Legal Description attached hereto and made a part hereof.

which has the address of     **125 W Monroe Street**
                                                  [Street]

**Paulsboro**        New Jersey        **08066**        ("Property Address");
[City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all

NEW JERSEY FHA MORTGAGE

installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

    4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    5.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    6.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    7.    **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time

·directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

    9.  **Grounds for Acceleration of Debt.**

        **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

            (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

        **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

        **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

        **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    10.  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately

**NEW JERSEY FHA MORTGAGE**

preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect

DOCKET# 93139    MB 9321 P 304

and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

**NEW JERSEY FHA MORTGAGE**

ITEM 2889L6 (0205)—MERS    *(Page 6 of 7 pages)*    GreatDocs™
To Order Call: 1-800-968-5775

DOCKET# 93139    MB 9321 P 305

"BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Laura Deschaine 12-14-05_ (Seal)  
**Laura L Deschaine**            -Borrower

_____ (Seal)  
                                 -Borrower

_____ (Seal)  
                                 -Borrower

_____ (Seal)  
                                 -Borrower

_____ (Seal)  
                                 -Borrower

_____ (Seal)  
                                 -Borrower

Signed, sealed and delivered in the presence of:

_____

State of _New Jersey_  
County of _Burlington_    , ss

On this    **14th**    day of    **December 2005**    , before me, the subscriber, personally appeared  
**Laura L Deschaine**

                                                                                     who, I am satisfied,  
**IS**    the person(s) named in and who executed the within instrument, and thereupon    **SHE**  
acknowledged that    **SHE**    signed, sealed and delivered the same as **HER**  
act and deed, for the purposes therein expressed.

_____  
Notary Public

Karen M. Hudnell  
A Notary Public of New Jersey  
My Commission Expires July 9, 2009

**NEW JERSEY FHA MORTGAGE**

ITEM 2889L7 (0205)—MERS            *(Page 7 of 7 pages)*            GreatDocs™  
                                                                     To Order Call: 1-800-968-5775

DOCKET# 93139    MB 9321 P 306

# FHA REHABILITATION LOAN RIDER

THIS REHABILITATION LOAN RIDER is made this **14th** day of **December 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Gateway Funding Diversified Mortgage Services L.P.**

("Lender"), of the same date and covering the property described in the Security Instrument and located at:
**125 W Monroe Street
Paulsboro, NEW JERSEY 08066**

[Property Address]

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.** Loan proceeds are to be advanced for the premises in accordance with the Rehabilitation Loan Agreement dated **December 14, 2005**, between Borrower and Lender. This agreement is incorporated by reference and made a part of this Security Instrument. No advances shall be made unless approved by the Secretary of Housing and Urban Development or a Direct Endorsement Underwriter.

**B.** If the rehabilitation is not properly completed, performed with reasonable diligence, or is discontinued at any time except for strikes or lockouts, the Lender is vested with full authority to take the necessary steps to protect the rehabilitation improvements and property from harm, continue existing contracts or enter into necessary contracts to complete the rehabilitation. All sums expended for such protection, exclusive of the advances of the principal indebtedness, shall be added to the principal indebtedness, and secured by the Security Instrument and be due and payable on demand with interest as set out in the Note.

**C.** If Borrower fails to perform any obligation under the loan, including the commencement, progress and completion provisions of the Rehabilitation Loan Agreement, and such failure continues for a period of 30 days, the loan shall, at the option of Lender, be in default.

**D.** The property covered by this Security Instrument shall include all of Borrower's interest in funds held by Lender in escrow under the Rehabilitation Loan Agreement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this FHA Rehabilitation Loan Rider.

_Laura Deschaine 12-14-05_ (Seal)    _____ (Seal)
**Laura L Deschaine**       -Borrower                                   -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                                   -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                                   -Borrower

(ADD ANY NECESSARY ACKNOWLEDGEMENT PROVISIONS)

ITEM 6669L0 (9701)                                                                 GREATLAND
                                                   To Order Call: 1-800-530-9393  Fax 616-791-1131

Issued by: **_Delaware Valley Abstract Corporation_**
Agent for Commonwealth Land Title Insurance Company Of New Jersey


Commonwealth
A LANDAMERICA COMPANY

Commitment No. ▮
File No.: ▮

### EXHIBIT "A"

ALL THAT CERTAIN tract or parcel of land and premises situate, lying and being in the Borough of Paulsboro, County of Gloucester and the State of New Jersey, more particularly described as follows:

BEGINNING at an iron bar set for a corner in the Northerly line of W. Monroe Street (33 feet wide) said iron bar being Eastwardly a distance of 40.00 feet from the intersection of said line of W. Monroe Street with the Easterly line of Cox Avenue, extending; thence

(1) North 07 degrees 22 minutes East, through Lots 61, 47 and 46 on Plan, a distance of 104.95 feet to an iron bar set for a corner in the division line between Lots 45 and 46 on said plan; thence

(2) South 82 degrees 38 minutes East along said division line a distance of 55.10 feet to an iron pipe found for a corner in the line of lands n/f Peter Limanni; thence

(3) South 07 degrees 22 minutes West along said lands a distance of 104.95 feet to an iron pipe found for a corner in the Northerly line of W. Monroe Street; thence

(4) North 82 degrees 38 minutes West along said line of W. Monroe Street a distance of 55.10 feet to the point of Beginning.

BEING the Easterly portion of Lots #46, 47 and 61 on the Plan of Lots and Streets as surveyed and plotted by Owen Carter in 1923.

ALSO BEING ▮ on the Official Tax Map of the Borough of Paulsboro.

COMMONLY KNOWN as 125 W. Monroe Street, Paulsboro, New Jersey.

ORIGINAL DMS

# NOTE

| FHA CASE NO. |
| --- |
| ▮▮▮▮▮▮▮▮ |

December 14, 2005
[Date]

125 W Monroe Street
Paulsboro, NEW JERSEY 08066

[Property Address]

1. **PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Gateway Funding Diversified Mortgage Services L.P.**

and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
**One Hundred Nine Thousand and no/100** Dollars
(U.S. $ **109,000.00**             ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    **Six and Three Quarters**

percent (            **6.7500** %) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
   (A) **Time**
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **February 01, 2006**        . Any principal and interest remaining on the first day of        **January 2036** , will be due on that date, which is called the "Maturity Date."
   (B) **Place**
   Payment shall be made at **300 Welsh Road, Building 5, Horsham, PENNSYLVANIA 19044**

or at such other place as Lender may designate in writing by notice to Borrower.
   (C) **Amount**
   Each monthly payment of principal and interest will be in the amount of U.S. $ **706.98**        .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE                                                                                                                6/96
                                                                                                                                GREATLAND ▮
ITEM 6432L1 (9606R)                                    (Page 1 of 3 pages)                              To Order Call: 1-800-530-9393 ▯Fax 616-791-1131

   **(D)  Allonge to this Note for Payment Adjustments**
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

   ☐ Growing Equity Allonge                    ☐ Graduated Payment Allonge

   ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**
   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**
   **(A)  Late Charge for Overdue Payments**
   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent (            4.0000%) of the overdue amount of each payment.
   **(B)  Default**
   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.
   **(C)  Payment of Costs and Expenses**
   If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**
   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
   Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Laura Deschaine_  12-14-05 ___(Seal)     _____(Seal)
**Laura L Deschaine**            -Borrower                                     -Borrower

_____(Seal)     _____(Seal)
                         -Borrower                                     -Borrower

_____(Seal)     _____(Seal)
                         -Borrower                                     -Borrower

*[Sign Original Only]*

Pay to the order of
without recourse
Gateway Funding Diversified Mortgage
Services, L.P.
By its General Partner: Gateway Funding, Inc.

_____
Vivian D'Amario
Assistant Vice President

ITEM 6432L3 (9605R)          *(Page 3 of 3 pages)*          GREATLAND ☐
                                                  To Order Call: 1-800-530-9393  Fax 616-791-1131